COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-263-CV

 

 

IN RE JULI BROWN                                                                 RELATOR

                                                    

                                              ------------

 

                                    ORIGINAL PROCEEDING

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








The primary issue we address in this original
proceeding is whether,  under the Uniform
Child Custody Jurisdiction and Enforcement Act (UCCJEA),[1]
Texas is the Ahome state@ of Erik
and Kodi, the children of Relator Juli Brown and Real Party in Interest Keith
Gordon Brown (RPI).  For the reasons set
forth below, we hold that Missouri has jurisdiction over the children under the
UCCJEA and, consequently, that at this point, the Tarrant County trial court
lacks jurisdiction over the children. 
Accordingly, we will conditionally grant the writ.

II.  Procedural Background

Relator Juli and RPI Keith are both pilots for
American Airlines; they married in April of 2000.  During the marriage, they had two children,
Kodi, who is now three years old, and Erik, who is eleven months old.  On June 16, 2006, at 10:08 a.m., Juli filed a
petition for divorce from Keith in Osage County, Missouri.[2]  Keith filed for divorce from Juli that same
day at 4:26 p.m. in Tarrant County, Texas. 


Three days later, on June 19, 2006, the Tarrant
County trial court entered a temporary restraining order against Juli and set a
hearing on the issue of temporary orders for June 29, 2006.  On June 28, 2006, Juli filed a motion to
abate the Texas proceedings.[3]  The Tarrant County associate judge held a








hearing the next day on Juli=s motion
to abate, found that the trial court possessed jurisdiction over the children,
and denied Juli=s motion to abate.[4]  Juli then filed the present original
proceeding.

III.  Standard of Review








Mandamus is appropriate when a Texas court has
asserted jurisdiction over a child custody matter contrary to the UCCJEA.  Tex.
Fam. Code Ann. ''
152.101-.317.  Whether a trial court has
subject matter jurisdiction is a question of law that we review under the de
novo standard.  Mayhew v. Town of
Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998), cert. denied, 526 U.S.
1144 (1999); see also Powell v. Stover, 165 S.W.3d 322, 324-25 (Tex.
2005) (orig. proceeding).  With respect
to the resolution of factual issues or matters committed to the trial court=s
discretion, we may not substitute our judgment for that of the trial court
unless the relator establishes that the trial court could reasonably have
reached only one decision and that the trial court=s
decision is arbitrary and unreasonable.  Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). 

IV.  Home State Determination under the UCCJEA

Subject matter jurisdiction over custody issues
in Texas is governed by the UCCJEA.  See
Tex. Fam. Code Ann. '' 152.201-.210. Section
152.201 of the Texas Family Code states the following test for initial child
custody jurisdiction: 

(a) Except as otherwise
provided in Section 152.204, a court of this state has jurisdiction to make an
initial child custody determination only if:

 

(1) this state is the home state of the child on the date of the
commencement of the proceeding, or was the home state of the child within six
months before the commencement of the proceeding and the child is absent from
this state but a parent or person acting as a parent continues to live in this
state;

 

(2) a court of another state does not have jurisdiction under
Subdivision (1), or a court of the home state of the child has declined to
exercise jurisdiction on the ground that this state is the more appropriate
forum under Section 152.207 or 152.208, and:

 

(A) the child and the child=s parents, or the child and at leaset one parent
or a person acting as a parent, have a significant connection with this state
other than mere physical presence; and

 

(B) substantial evidence is available in this state concerning the
child=s care, protection,
training, and personal relationships; 

 








(3) all courts having jurisdiction under Subdivision (1) or (2) have
declined to exercise jurisdiction on the ground that a court of this state is
the more appropriate forum to determine the custody of the child under Section
152.207 or 152.208; or 

 

(4) no court of any other state would have jurisdiction under the
criteria specified in Subdivision (1), (2), or (3).

  

Id. '
152.201(a).  The family code defines Ahome
state@ as Athe
state in which a child lived with a parent or a person acting as a parent for
at least six consecutive months immediately before the commencement of a child
custody proceeding.@  Id. '
152.102(7).  The date of the commencement
of the child custody proceeding is used as the point of reference from which to
determine the child=s home state.  In re Oates, 104 S.W.3d 571, 578 (Tex.
App.CEl Paso
2003, orig. proceeding).  ACommencement@ is
defined as Athe filing of the first pleading
in a proceeding.@ 
Tex. Fam. Code Ann.
at '
152.102(5).








Family code section 152.206(a) provides that a
Texas court Amay not@
exercise jurisdiction if, at the time of the commencement of the Texas
proceeding, (1) a proceeding concerning the custody of the child has been
commenced in a court of another state, and (2) that state has jurisdiction
substantially in conformity with this chapter, that is in conformity with the Texas
UCCJEA.  Id. at '
152.206(a).  Here, Juli filed for divorce
first in Missouri, but the question remains whether Missouri=s
purported jurisdiction is Asubstantially
in conformity with this chapter.@  See id.  Resolution of that question requires the
determination of whether Texas is the children=s home
state because, under the Texas UCCJEA, home-state jurisdiction trumps all other
possible bases of jurisdiction in an initial child custody action; if Texas is
the children=s home state, Missouri could not
be exercising jurisdiction Asubstantially
in conformity with this chapter.@  See id. '' 152.201, .206(a); accord
Powell, 165 S.W.3d at 328 (holding Tennessee=s
exercise of jurisdiction was Asubstantially
in accordance with [the UCCJEA]@ because
Tennessee was child=s home state).








In determining home-state jurisdiction, the Texas
Supreme Court has adopted a Aphysical
presence@ test
that focuses exclusively on the child=s
physical location for the six month period preceding the filing of a petition
requiring an initial child-custody determination.  Powell, 165 S.W.3d at 327-28.  In adopting the physical presence test in Powell,
the supreme court specifically rejected use of a Asubjective
intent@ test
and a Atotality
of the circumstances@ test to determine home-state
jurisdiction under the Texas UCCJEA.  165
S.W.3d at 326-27.  Consequently, the
parents= Asubjective
intent@ as to
the child=s home state is not relevant;
that is, a parent=s view that a six-month
residency in another state is temporary is not controlling.  Id. at 326 (AWe . . .
decline to apply a test to determine where a child >lived= based
on the parties= subjective intent.@)  Likewise, a Atotality
of the circumstances@ test that would consider where
the parties= vehicles are registered, where
they vote, and where they pay their taxes is not applied in deciding the home
state of a child.  Id. at 327
(holding that Aa test based on the totality of
the circumstances suffers from essentially the same weakness as a purely
intent-based test; both seek to promote flexibility at the expense of the
jurisdictional certainty that the home-state provision was intended to provide@).  Thus, we now review the evidence concerning
the children=s physical presence in the State
of Texas.  See id.

        A.  Evidence of Kodi=s Home
State

Juli testified that the family has lived in
Missouri since February 2004; they own a 4,000 square-foot-house, Aan old
hunting lodge@ that was renovated in
1999-2000.  Juli=s
mother, Georgina, lives in a small cottage approximately twenty feet from the
main house.  The couple also owns a house
in Euless, Texas; Keith=s mother and step-father live in
the house, and Juli, Keith, Kodi, and Erik stay at the Texas house when they
are in Dallas.[5]  








Juli and Keith disagree about the exact amount of
time the children had spent in Texas and Missouri during the six months before
Juli and Keith filed their respective divorce petitions seeking child
custody.  But they both testified that
for the six months prior to June 16, 2006, Kodi stayed in Missouri with
Georgina whenever Juli and Keith worked. 
Keith testified that Kodi spent about eighty to ninety percent of his
time in Missouri because Georgina was in Missouri and she was his primary
babysitter.  Juli testified that Kodi
made only short visits to Texas during the six months immediately proceeding
this litigation; he spent just four or five days in Texas during the six-month
period. 

Keith testified that whenever Juli was not
working she would be in Missouri.  Keith
testified that he spends all of his free time in Missouri because Kodi is
there.  Keith testified that Atraining@ to Achange
airplanes@ takes about a month and that
while Juli underwent training in Dallas in January 2006, Kodi may have been in
Texas as much as Ahalf the time.@  Kodi had been attending preschool in Missouri
for one day a week for the past two years, and he is enrolled for the fall 2006
semester of preschool; his pediatrician is also located in Missouri.  








This evidence demonstrated that Texas has never
been Kodi=s home state; there is no
evidence that Kodi lived in Texas with a parent or person acting as a parent
for at least six consecutive months immediately before the commencement of
these proceedings.  See Tex. Fam. Code Ann. '
152.101(7); Walker, 827 S.W.2d at 839-40.  Kodi has always Alived@ in
Missouri, even when his parents were working in another state.  See Powell, 165 S.W.3d at 326.  Both Juli and Keith testified that they spent
their time off in Missouri; Juli because she said the family lived in Missouri,
Keith because he said Kodi was there.[6]  See Tex.
Fam. Code Ann. ' 152.102(7) (recognizing that a
period of a parent=s temporary absence from state
is nonetheless included in the six-month period establishing child=s Ahome
state@).








Keith points to the fact that Kodi spent two and
a half or three months in Hungary this summer with Georgina as defeating a
determination that Missouri is Kodi=s home
state.  But Kodi=s
three-month visit to Hungary was clearly a temporary absence from Missouri;
Juli testified that he spent the summer there with his grandmotherCnot with
a parent or person acting as a parent as necessary to statutorily generate a
new home stateCto work on his second language,
Hungarian.  See id. '
152.201(a)(1) (recognizing that state remains home state if child lived in
state for six months and is absent from state but parent continues to
live in state); In re Lewin, 149 S.W.3d 727, 739 (Tex. App.CAustin
2004, orig. proceeding) (holding that child=s visits
to Texas and Canada were clearly temporary absences from home state of New
Jersey);  Milner v. Kilgore, 718
S.W.2d 759, 760-61 (Tex. App.CCorpus
Christi 1986, orig. proceeding) (holding, under predecessor to Texas=s
version of UCCJEA, that child=s near
two-month visit to grandparents in Texas was Aonly a
period of temporary absence from Missouri@).     

We hold that Texas is not Kodi=s home
state and that Missouri is Kodi=s home
state.  Therefore, the trial court abused
its discretion by determining that Texas had jurisdiction because an initial
suit concerning Kodi=s custody had been filed in
Missouri and Missouri, as Kodi=s home
state, may exercise jurisdiction substantially in accordance with the UCCJEA.[7]  See Tex.
Fam. Code Ann. ' 152.206; Powell, 165
S.W.3d at 328.

B. 
Evidence of Erik=s Home
State








After Erik was born on September 5, 2005, Erik
stayed at the Missouri house for almost four months before his first visit to
Texas on December 28, 2005.  Both Juli
and Keith testified that when Juli returned to work on December 28, she took
Erik to Texas so that her mother-in-law could care for him while Juli was
working and so that Juli could continue to breast feed Erik.  Between December 28, 2005 and the
commencement of these proceedings on June 16, 2006, Juli and Erik spent about
eighteen days of each month in Texas while Juli was working, but on her days
off, the two would always return to Missouri. 


Texas is clearly not Erik=s home
state; the time period between his first trip to Texas on December 28, 2005 and
July 16, 2006 is less than the six-month requirement to establish home-state
jurisdiction.  See Tex. Fam. Code Ann. '
152.101(7).  Nor do we hold that Missouri
is Erik=s home
state.  Erik spent only four or four and
a half months in Missouri before he went to Texas, and for several months prior
to the commencement of the litigation, he had been spending a majority of his
timeCeighteen
days each monthCin Texas.  See Mo.
Ann. Stat. '' 452.445(4) (West 2006) (using a
definition of Ahome state@ that is
very similar to the definition used in the Texas statute),  452.450.1 (1) (a), (b) (setting forth when
Missouri possesses home-state jurisdiction). 








Although Missouri could not assert home-state
jurisdiction over Erik, Missouri=s
version of the UCCJEA=s significant connection
jurisdiction provides that a Missouri court may assert jurisdiction if it is in
the child=s best interest because (a) the
child and his parents have a significant connection with the state and (b)
substantial evidence concerning the child=s
present and future care, protection, training, and personal relationships is
available in the state.  Mo. Ann. Stat. '
452.450.1(2).  These significant
connection jurisdictional provisions are very similar to Texas=s
significant connection jurisdictional provisions.  See Tex.
Fam. Code Ann. ' 152.201(2)(A), (B).  Texas requires the same two findings, but
unlike Missouri, Texas does not require a finding that it is in the best
interest of the child that a court of this State assume jurisdiction because of
the two findings.  Compare Mo. Ann. Stat. '
452.450.1(2) with Tex. Fam. Code
Ann. ' 152.201(2)(A), (B).








Erik and his parents have significant connections
to MissouriCfor example, Juli and Keith have
a large house in Missouri, Juli testified that Aeverything
that=s
valuable and meaningful@ to her is in the Missouri
house, Erik and Juli spent the first few months of Erik=s life
at the Missouri house, Juli and Keith returned to Missouri when they were not
working,  and Juli=s mother
lives in Missouri.  See Mo. Ann. Stat. '
452.450.1(2)(a) (2006); Reed v. Reed, 62 S.W.3d 708, 714 (Mo. App. W.D.
2001); see also Tex. Fam. Code
Ann. ' 152.201(a)(2)(A); In re Jeffries, 979
S.W.2d 429, 436-37 (Tex. App.CWaco
1998, orig. proceeding).  Additionally,
substantial evidence concerning Erik=s
present and future care, protection, training, and personal relationships is
available in MissouriCfor example, Erik=s
primary pediatrician is in Missouri, Juli testified that she lives in Missouri,
and almost all of Erik=s belongings are in the Missouri
house.  See Mo. Ann. Stat. '
452.450.1(2)(b); Reed, 62 S.W.3d at 714; see also Tex. Fam. Code Ann. ' 152.201(a)(2)(B);
Jeffries, 979 S.W.2d at 436-37. 
Thus, a Missouri court could determine that under the Missouri UCCJEA
provision dealing with significant connection jurisdiction it would be in Erik=s best
interest for Missouri to assume jurisdiction over him; a Missouri court
exercising jurisdiction over Erik based on this determination would be
exercising significant connection jurisdiction substantially in compliance with
its UCCJEA.  See Mo. Ann. Stat. '
452.450.1(2).  And based on the almost
identical significant connection provisions in Texas=s
UCCJEA, Missouri=s exercise of significant
connection jurisdiction over Erik would likewise be substantially in compliance
with Texas=s UCCJEA.  See Tex.
Fam. Code Ann. ' 152.201(a)(2).    








Finally, even in light of Erik=s and
his parents= significant connections to
Missouri, because Erik has no home state, Texas could conceivably still
exercise significant connection jurisdiction over Erik under section
152.201(a)(2) if Erik and his parents have significant connections to Texas.   See id.  But suit was first brought in Missouri. See
id. '
152.206(a); Ruffier v. Ruffier, 190 S.W.3d 884, 889 (Tex. App.CEl Paso
2006, no pet.). Accordingly, section 152.206(a)Cprohibiting
Texas from exercising jurisdiction if a proceeding concerning the custody of
the child has been commenced in a court of another state having jurisdiction
substantially in conformity with this chapterC
controls, and because the Missouri court was exercising jurisdiction over Erik
substantially in conformity with Texas=s UCCJEA=s
significant connection jurisdictional provision, Texas trial courts are
statutorily precluded from exercising jurisdiction over Erik unless the
Missouri court terminates or stays its proceedings based on a finding that
Texas would be a more convenient forum.  See
Tex. Fam. Code Ann. '
152.206(a); In re Presley, 166 S.W.3d 866, 868 (Tex. App.CBeaumont
2005, orig. proceeding).  Unless and
until Missouri has declined to exercise jurisdiction in favor of Texas, Texas
is not authorized to assert jurisdiction over Erik=s
custody determination.  See Tex. Fam. Code Ann. '
152.206(a).  Because a proceeding
concerning the custody of Erik had been commenced in another state having
jurisdiction substantially in compliance with the Texas UCCJEA, we need not
undertake an analysis to determine whether significant connection jurisdiction
exists in Texas.[8]  








We hold that the Texas trial court did not have
jurisdiction over Erik because a proceeding concerning the custody of Erik had
already been commenced in MissouriCwhere
Erik and his parents have significant connections.  See
Tex. Fam. Code Ann. '
152.206(a); Mo. Ann. Stat. '
452.450(1)(b) (recognizing that a Missouri court has jurisdiction to make an
initial child custody determination on Asignificant
connection@ grounds).  Therefore, the trial court abused its
discretion in determining that Texas had jurisdiction because Missouri was
exercising jurisdiction over Erik substantially in accordance with the Texas
UCCJEA.  See Tex. Fam. Code Ann. '
152.206(a); Powell, 165 S.W.3d at 328.

V.  Keith=s Arguments








In his response, Keith makes numerous arguments
that he contends establish Texas=s
jurisdiction over his divorce action. 
Keith argues that Texas can maintain the parties= divorce
action even if Missouri is the home state for the custody issues.  In some circumstances, a trial court may
exercise jurisdiction over issues related to the dissolution of a marriage but
may be restricted from exercising jurisdiction over child custody issues.  See Tex.
Fam. Code Ann. ' 6.308(a), (b)(2); see also
Seligman-Hargis v. Hargis, 186 S.W.3d 582, 586 (Tex. App.CDallas
2006, no pet.).  But see Powell,
165 S.W.3d at 324, 328 (noting wife filed for divorce in Texas and requiring
stay and dismissal of Texas Aproceedings@ unless
Tennessee court determined Texas was a more appropriate forum).  The issue before us, however, is not whether
Texas possesses jurisdiction over the parties= divorce
action; the issue before us in this original proceeding is whether Texas
possesses jurisdiction to make an initial child custody determination pursuant
to the terms of the UCCJEA.  Accordingly,
we do not address the jurisdictional issues related to the parties= divorce
action that are raised by Keith in his response.

VI.  Conclusion

We conditionally grant the writ.  The trial court is ordered to communicate
with the Missouri court and, until such time that the Missouri court declines
jurisdiction, the trial court is ordered to stay all proceedings related to the
initial child custody determination.  See
Tex. Fam. Code Ann. '
152.206(a), (b).  If the Missouri court
does not determine that Texas is a more appropriate forum, the trial court
shall dismiss all proceedings related to the initial child custody
determination. See id. 

 

                                                    

 

 

 








We are confident that the trial court will comply with this opinion
within the next forty-five days.  The
writ will issue only if the trial court fails to comply.  All other relief requested by Relator is
denied.

 

 

SUE
WALKER

JUSTICE

 

PANEL A:  LIVINGSTON, DAUPHINOT and WALKER, JJ.

 

DELIVERED:  September 14, 2006

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 








 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

  

 

 

  

 

 











[1]See Tex. Fam. Code Ann.
'' 152.101-.317 (Vernon 2003 & Supp. 2006).





[2]The petition was date stamped but not time stamped.  However, Juli presented the court with a ACorrected
Affidavit@ of the clerk for the Circuit Court of Osage County,
Missouri, in which the clerk states that Juli Afiled her petition for Dissolution of Marriage on June
16, 2006 at 10:08 a.m. per filing records.@  





[3]Keith points out that Juli=s
written motion to abate alleged only that he failed to meet the residency
requirements to maintain a divorce in Texas; it did not allege that the Texas
court lacked subject matter jurisdiction over the children.  The record of the abatement hearing, however,
documents that the central dispute at this hearing was whether the Tarrant
County trial court possessed jurisdiction over the children, and the associate
judge expressly ruled at the end of the hearing that Athis
court does have jurisdiction . . . under the UCCJEA.@  Consequently, the issue is properly before
us.





[4]Juli attempted to appeal the associate judge=s
temporary order, but the trial court dismissed her appeal as untimely.  Because subject matter jurisdiction generally
cannot be conferred by waiver and because the family code permits Juli to bring
this issue via her petition for writ of mandamus, it is properly before
us.  See, e.g., Dubai Petroleum Co. v.
Kazi, 12 S.W.3d 71, 76 (Tex. 2000) (recognizing that subject matter
jurisdiction generally cannot be conferred upon any court by waiver).





[5]At the time of the hearing, Juli was based in Dallas,
Texas, and Keith was based in St. Louis, Missouri.  





[6]However, Keith also testified that he spent about
sixty to seventy nights in the Euless home in the past six months, although
Juli disagreed and testified that he probably spent twenty to thirty nights
there Aat the most.@  





[7]Because Texas prioritizes home-state jurisdiction over
jurisdiction predicated on significant connections, we do not address Kodi=s
obvious connections to Texas.  See In
re Calderon‑Garza, 81 S.W.3d 899, 904 (Tex. App.CEl Paso
2002, orig. proceeding).

 

 





[8]We note that Juli also argues that, even if the Texas
trial court has jurisdiction, the court should have applied section 152.208 of
the Texas version of the UCCJEA, which mandates that the court shall decline to
exercise its jurisdiction if a person seeking to invoke its jurisdiction has
engaged in unjustifiable conduct.  See
Tex. Fam. Code Ann. '
152.208(a).  Keith went to Missouri and
took the children from Georgina=s care the night before the Texas trial court=s
hearing on June 29, 2006, and an Amber Alert was issued for the children that
night; Keith arrived at the Texas courthouse on June 29 with the children.  However, the record before this court does
not include sufficient facts to conclusively establish Juli=s
allegation that Keith=s Aconduct was an attempt to place the children in Texas
so as to bring them before the court to support his claim of Texas
jurisdiction.@  Thus, we
cannot say that the Tarrant County trial court abused its discretion by denying
Juli=s motion to abate its proceedings on section
152.208(a) grounds.  See id.; Presley,
166 S.W.3d at 869.