**Russell POWELL, Petitioner,**

v.

**Honorable Judge Earl STOVER, III, Respondent.**

No. 03–1154.

Supreme Court of Texas.

May 27, 2005.

lived in Tennessee with his parents for at least six consecutive months immediately before the child-custody proceeding was commenced, Texas is not the child's home state and the trial court's exercise of jurisdiction was improper. Accordingly, we conditionally grant the petition for writ of mandamus and order the trial court to stay this proceeding and communicate with the Tennessee court. If the Tennessee court does not determine that Texas is a more appropriate forum, the trial court shall dismiss this proceeding. The writ will issue only if the trial court does not comply.

## I

In February 2001, Russell Powell moved from Texas to Tennessee to accept a new position with his employer. In May 2001, his wife, Sonia Powell, sold her house in Texas, closed her Texas bank accounts, and moved with the couple's son, D.B.P., to Tennessee to join Russell. There, the couple leased a house with an option to buy. Within a week of her arrival in Tennessee, Sonia obtained a Tennessee driver's license, opened a checking account with a Tennessee bank, and began applying for jobs. She and Russell enrolled D.B.P. in kindergarten. Sonia delivered newspapers for a short time and then began working at Wal–Mart in September 2001. On April 24, 2002, Sonia moved back to Texas and took D.B.P. with her. At the time, she was seven months pregnant with D.T.P., who was later born in Texas.

Jack Lawrence, Beaumont, Robert Larry Brooke, Silsbee, and Richard A. Spivey, Kingsport, TN, for petitioner.

Martha Bevil Wright, Silsbee, for respondent.

Ben K. Wexler, Greenville, TN, pro se.

Justice O'NEILL delivered the opinion of the Court.

This is an initial child-custody case in which both Texas and Tennessee claim jurisdiction. We must decide whether Texas is the child's "home state" for purposes of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), and thus whether the Texas trial court properly assumed jurisdiction over the case. We hold that, because the child

Approximately two weeks after arriving in Texas, on May 6, 2002, Sonia filed for divorce in Hardin County, Texas, requesting managing conservatorship of D.B.P. She asserted in her petition that she had been a domiciliary of Texas for the preceding six-month period and a resident of Hardin County for the preceding 90–day period. Sonia testified that she was born

and raised in Texas, that she was "trying [Tennessee] out," and that she did ·not intend to reside permanently in Tennessee. On August 5, 2002, the trial court issued temporary orders appointing Sonia temporary managing conservator of D.B.P.

Russell filed for divorce in Tennessee two weeks after Sonia filed in Texas. The Tennessee court issued a temporary parenting plan on May 21, 2002, awarding custody of D.B.P. to Russell. The court also found that Tennessee "has jurisdiction over [D.B.P.] as the parties did not separate until April 22, 2002."

Russell then filed in the Texas proceeding a plea in abatement and a motion to dismiss for lack of jurisdiction arguing that the "Tennessee Court secured service of citation first," giving it "exclusive jurisdiction over this divorce action." He further claimed that abatement and dismissal were required because neither he nor Sonia had been "a domiciliary of Texas for [the] six months ... preceding the filing of this suit [or] a resident of [Hardin] County for ninety days preceding this suit," as required by the Texas Family Code. Tex. Fam.Code § 6.301.

The trial court denied Russell's plea in abatement, stating in a letter to counsel: "This case involves a very close question of fact. The fact that both children were born in Texas and that the home state of the youngest child is clearly Texas are persuasive. The Motion for Abatement is *denied.*" The court also entered an order denying the motion to dismiss for lack of jurisdiction without explanation.

Russell sought mandamus relief, asking the court of appeals to vacate the trial court's order and to transfer the case to the Chancery Court of Hawkins County,

Tennessee. A divided court of appeals denied mandamus relief, holding that the trial court did not abuse its discretion in retaining jurisdiction because Texas was clearly D.T.P.'s home state, and there was "a fact issue on whether [Sonia's] time spent· in Tennessee was a temporary absence" and thus whether Texas or Tennessee was D.B.P.'s home state. 121 S.W.3d 846, 847. Russell petitioned this Court,[1] claiming the trial court lacked subject-matter jurisdiction over this custody dispute because, among other things,.Texas is not D.B.P.'s home state. Russell does not challenge the trial court's jurisdiction over the dispute as to D.T.P., who has never lived anywhere but Texas.

## II

 In considering Russell's petition, we focus on the trial court's ruling. *In re Meador,* 968 S.W.2d 346, 350 (Tex.1998). A writ of mandamus is an appropriate means to require a trial court to comply with the UCCJEA's jurisdictional requirements. *See In re Forlenza,* 140 S.W.3d 373, 379 (Tex.2004); *Geary v.· Peavy,* 878 S.W.2d 602, 603 (Tex.1994) (stating that mandamus is an appropriate remedy to resolve a jurisdictional dispute under the former Uniform Child Custody Jurisdiction Act). The question in this case, then, is whether the trial court abused its discretion in denying Russell's motions to abate and dismiss. A trial court abuses its discretion if it fails to analyze or apply the law correctly. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). Construction of the UCCJEA's "home state" provision as codified in the Texas Family Code is a question of law that we review *de novo.*

---

1. Though the relator styled this case as a petition for review, he challenges the court of appeals' denial of mandamus relief and does not appeal from a final order. *See* Tex. Gov't

Code § 22.001. Therefore, we treat it as a petition for writ of mandamus in this Court as well.

*See McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003).

## III

■ Effective September 1, 1999, Texas adopted the UCCJEA, which replaced the previously adopted Uniform Child Custody Jurisdiction Act (UCCJA). Act of Apr. 22, 1999, 76th Leg., R.S., ch. 34, § 1, 1999 Tex. Gen. Laws 52 (codified at Tex. Fam.Code §§ 152.001–152.317). The UCCJA provided four bases for jurisdiction over a custody dispute, but did not prioritize one over the others. Act of May 2, 1983, 68th Leg., R.S., ch. 160, § 1, 1983 Tex. Gen. Laws 691, 693–94 (as amended), *repealed by* Act of Apr. 22, 1999, 76th Leg., R.S., ch. 34, § 1, 1999 Tex. Gen. Laws 52, 64–65. This often led courts in different states to simultaneously exercise jurisdiction in child-custody cases. The UCCJEA was designed, in large part, to remedy this situation by prioritizing home-state jurisdiction. Stoner, *The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)—A Metamorphosis of the Uniform Child Custody Jurisdiction Act (UCCJA),* 75 N.D. L.Rev. 301, 313 (1999); House Comm. on Juvenile Justice and Family Issues, Bill Analysis, Tex. H.B. 797, 76th Leg., R.S. (1999) (stating that "this Act revises the child custody jurisdiction law to prioritize home state jurisdiction"); *see In re Forlenza,* 140 S.W.3d at 374–75 (discussing the UCCJEA in the context of continuing jurisdiction over custody matters). The Texas Family Code accordingly prioritizes home-state jurisdiction and provides in pertinent part that a court of this state has jurisdiction to make an initial child-custody determination only if

(1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]

Tex. Fam.Code § 152.201(a)(1). Because this case involves an initial child-custody determination, and home-state jurisdiction has priority, the question presented is whether, on the date the proceeding was commenced, Texas or Tennessee was D.B.P.'s home state.

The Texas Family Code defines "home state" as

the state in which a child lived with a parent ... for at least six consecutive months immediately before the commencement of a child custody proceeding.... A period of temporary absence of a parent ... is part of the period.

*Id.* § 152.102(7). Russell asserts that this language creates a bright-line, six-month test focused on the child's physical presence. Hence, in his view, D.B.P.'s ten-month stay in Tennessee with his parents confers home-state jurisdiction on the Tennessee court. But Sonia claims the proper analysis is not so simple. She argues that D.B.P.'s time in Tennessee was merely a "temporary absence" from Texas and that Texas remained D.B.P.'s home state throughout his stay in Tennessee because Sonia intended to be there only temporarily. We reject Sonia's argument for a number of reasons.

First, Sonia's argument presumes that her own intent should control and that Russell's is irrelevant. But the Family Code's definition of "home state" is the state "in which a child lived with *a parent,*" and Russell is a parent with whom D.B.P. undisputedly lived in Tennessee for over ten consecutive months preceding commencement of the custody dispute. Sonia's premise, that she did not "reside" in Tennessee and therefore D.B.P. didn't either, necessarily presumes that she is the only parent that the statute covers,

which of course is not the case. Even if Sonia's residence in Tennessee was temporary because she intended to return to Texas, as she claims, it is immaterial in determining whether Tennessee acquired home-state status through Russell.

■ Second, we believe that a test based on subjective intent—whether it examines the intent of the mother, the father, or the child—would thwart the UC-CJEA's meaning and purpose. When interpreting statutes we try to give effect to legislative intent. *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 383 (Tex.2000). In doing so, we look first to the plain and common meaning of the statute's words. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex.1999). The Family Code defines "home state" as the state in which a child "lived" with a parent. Tex. Fam.Code § 152.102(7). The word "lived" strongly connotes physical presence. *See* Webster's Third New International Dictionary 1323 (1961) (defining "live" as "to occupy a home"). We think it significant that the Legislature chose the word "lived" as opposed to "resided" or "was domiciled." The test for "residence" or "domicile" typically involves an inquiry into a person's intent. *See Mills v. Bartlett,* 377 S.W.2d 636, 637 (Tex.1964) ("Volition, intention and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting the permanent residence or domicile."). In our view, the Legislature used the word "lived" "precisely to avoid complicating the determination of a child's home state with inquiries into the states of mind of the child or the child's adult caretakers." *Escobar v. Reisinger,* 133 N.M. 487, 64 P.3d 514, 517 (2003).

The purposes behind the UCCJEA further suggest that a child's physical location is the central factor to be considered when determining a child's home state. The UCCJEA was intended to make the determination of jurisdiction more straightforward. For instance, the comments to the original version of the UCCJEA, written by the National Conference of Commissioners on Uniform State Laws and adopted substantially unchanged by Texas, state that the UCCJEA should be interpreted to "[a]void jurisdictional competition and conflict with courts of other States," to "[p]romote cooperation with the courts of other States," to "[d]iscourage the use of the interstate system for continuing controversies over child custody," and to "[d]eter abductions of children." Uniform Child Custody Jurisdiction & Enforcement Act § 101 cmt., 9 U.L.A. 657 (1999). The UCCJEA achieves this purpose by prioritizing home-state jurisdiction, which helps to avoid the jurisdictional competition and conflict that result when courts in different states determine jurisdiction based on subjective factors. *See Welch–Doden v. Roberts,* 202 Ariz. 201, 42 P.3d 1166, 1173 (Ct.App.2002). The UC-CJEA was thus intended to give prominence to objective factors. We believe that the UCCJEA should be construed in such a way as to strengthen rather than undermine the certainty that prioritizing home-state jurisdiction was intended to promote, and thus decline to apply a test to determine where a child "lived" based on the parties' subjective intent. *See Escobar,* 64 P.3d at 517 (determining a child's "home state" should not involve "inquiries into the states of mind of the child or the child's adult caretakers"); *see also In re Marriage of Schoeffel,* 268 Ill.App.3d 839, 206 Ill.Dec. 59, 644 N.E.2d 827, 829 (1994) (stating that "the intent of the parties is not controlling for purposes of the [UC-CJA]").

The trial court in this case was apparently persuaded by the fact that "both

children were born in Texas and that the home state of the youngest child is clearly Texas." The court of appeals was additionally persuaded by the fact that D.B.P. "was born in Texas and lived here until he was nearly five years old, when the family moved to Tennessee." 121 S.W.3d at 847. Thus, both courts effectively applied a test that considered the totality of the facts and circumstances to determine D.B.P.'s home state. At least one Texas court of appeals appears to have adopted a similar approach. *See In re Estes,* 153 S.W.3d 591, 598 (Tex.App.-Amarillo 2004, no pet.) (considering factors such as the parents' intent as well as other facts and circumstances in deciding where a child lived). Some courts from other jurisdictions have also adopted a similar approach. *See, e.g., Chick v. Chick,* 164 N.C.App. 444, 596 S.E.2d 303, 308 (2004) (deeming a totality of the circumstances approach "the most appropriate choice"); *In re S.M.,* 938 S.W.2d 910, 918 (Mo.Ct.App.1997) (stating that "the totality of the circumstances test is best suited to adequately deal with the variety of situations which occur"). But a test based on the totality of the circumstances suffers from essentially the same weakness as a purely intent-based test; both seek to promote flexibility at the expense of the jurisdictional certainty that the home-state provision was intended to provide.

This does not mean that the UCCJEA's purpose is intractable irrespective of the circumstances a particular case presents. Two other sections of the UCCJEA provide the flexibility needed to avert potential injustice once the trial court has determined the child's home state. The first, section 152.208, states that if a court acquires jurisdiction "because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct," then with certain exceptions "the court shall decline to exercise jurisdiction." Tex. Fam.Code § 152.208. Thus, for example, were a state

to acquire home-state jurisdiction through a parent's illegal or improper actions, the court could decline to exercise jurisdiction. The second, section 152.207, is the inconvenient-forum provision; it allows the home-state court to defer jurisdiction if the court is an inconvenient forum under the circumstances and a court in another state would provide a more appropriate forum. *Id.* § 152.207; Tenn.Code Ann. § 36–6–222 (Tennessee's version of the UCCJEA). In making such a determination, the home-state court may consider:

(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) the length of time the child has resided outside this state;

(3) the distance between the court in this state and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues in the pending litigation.

Tex. Fam.Code § 152.207; *see also* Tenn. Code Ann. § 36–6–222. Applying a physical-presence test to determine home-state jurisdiction, then allowing that court to consider the forum's relative convenience, creates jurisdictional certainty without diluting the significance of the underlying

facts and circumstances presented in an individual case.

■ We therefore hold that in determining where a child lived for purposes of establishing home-state jurisdiction, the trial court must consider the child's physical presence in a state. *See Escobar,* 64 P.3d at 517 (stating that the proper test "focuses on the historical fact of the child's physical presence in a jurisdiction"); *Schoeffel,* 206 Ill.Dec. 59, 644 N.E.2d at 829–30 (looking solely to the duration of a child's presence when determining home state). To the extent that *In re Estes* conflicts with our holding, we disapprove the decision. *Estes,* 153 S.W.3d at 598. D.B.P.'s physical presence in Tennessee with his parents for over ten months immediately before the commencement of this custody proceeding conclusively establishes that he "lived" in Tennessee and that Tennessee is D.B.P.'s home state under Texas's version of the UCCJEA.

As we have said, the UCCJEA allows the court in a child's home state to defer jurisdiction to a court of another state if the home state is an inconvenient forum under the circumstances and the other state would be a more appropriate forum. *See* Tex. Fam.Code § 152.207; Tenn.Code Ann. § 36–6–222. In this instance, D.B.P. has strong ties to Texas because he lived in Texas for five years before moving to Tennessee, and Texas is his brother's home state. It would presumably be undesirable to require custody disputes to proceed in different states if one court can resolve all custody issues. But the question of whether Texas is a more appropri-

ate forum than Tennessee is not for the Texas court to decide; it is a determination that must be made by a court in D.B.P.'s home state, which in this case is Tennessee.

## IV

We conclude that the trial court abused its discretion in denying Russell's request to abate these proceedings in favor of the Tennessee court.[2] In a situation like this, when there are simultaneous custody proceedings in different states, the Family Code details the proper procedure:

> If the [Texas trial] court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter, the court of this state shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this chapter does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding.

Tex. Fam.Code § 152.206(b). Here, Tennessee's exercise of jurisdiction is "substantially in accordance with [the UCCJEA]" because Tennessee is D.B.P.'s home state. *Id.* Accordingly, without hearing oral argument, Tex.R.App. P. 52.8(c), we conditionally grant the petition for writ of mandamus and order the trial court to stay this proceeding and communicate with the Tennessee court. If the Tennessee court does not determine that

---

2. In the court of appeals, Russell filed a motion arguing that Sonia falsified the residency requirements of section 6.301 and failed to provide sworn information about where D.B.P. lived as section 152.209 requires. Tex. Fam.Code §§ 6.301, 152.209. Sonia's actions, Russell claimed, amounted to unjustifiable conduct as described in section 152.208

and should have resulted in dismissal. *Id.* § 152.208. The court of appeals did not address these issues, and Russell asserts that we should remand this case to the court of appeals to consider them. Because of our holding today, we decline to remand these issues for consideration.

Texas is a more appropriate forum, the trial court shall dismiss this proceeding. The writ will issue only if the trial court does not comply.