In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00030-CV

                                                ______________________________

 

 

                             IN THE
MATTER OF THE MARRIAGE OF

CANDICE RAE MARSALIS AND
JAMES FRANK MARSALIS

AND IN THE INTEREST OF
W.D.M., S.P.M., J.E.M.,

J.J.M., J.L.M., AND
M.R.M., CHILDREN

 

 

                                                                                                  


 

 

                                            On Appeal from the County Court at Law

                                                             Panola County, Texas

                                                          Trial Court
No. 2009-290

 

                                                                                                  


 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley

Concurring Opinion by Justice Carter

 








                                                                   O P I N I O N

 

            This
case is a tale of competing and parallel actions for divorce in two sister
states:  Texas and Louisiana.  Since the date of different occurrences have
a distinct impact on a complete understanding of this case, a chronology of
events is helpful at the outset.

            1.         James Frank Marsalis, his wife Candice
Rae, and their six children had lived in Louisiana for several years, where
they owned a home.  James commenced
working in Texas and was commuting back and forth between his workplace and his
home, spending nights in both places. 
James’ parents resided in Panola County, Texas.  After some temporary moves back and forth and
visits with James’ parents, in order to maintain a more stable marriage, all of
the Marsalis family moved from Louisiana to Panola County, Texas, in 2009 and
placed their home and property in Louisiana on the market for sale.  According to James, this move took place
March 21; Candice testified at the Panola County hearing that it occurred April
14.[1]

            2.         Apparently, the effort to achieve the
marital stability they sought by moving to Texas failed.  James filed a suit July 29, 2009, in Panola
County, Texas;[2]
this action sought a dissolution of the marriage, a disposition of their
community property, and a child custody adjudication of the couple’s six
children.  

            3.         After James filed for divorce (August
9), Candice took the children and returned to reside in the still-unsold house
in Louisiana where the family had previously resided.  

            4.         In September, Candice filed an action
for divorce in St. Landry Parish, Louisiana, attaching a copy James’ Texas
petition for divorce to her pleading. 
Candice then filed a special appearance and plea in abatement before the
Panola County court, arguing that under the Uniform Child Custody Jurisdiction
and Enforcement Act (UCCJEA), the Panola County court lacked subject-matter
jurisdiction over the children because the children had not lived in Texas for
six consecutive months prior to the filing of the divorce.

            5.         On December 7, a hearing was held in
the Louisiana divorce action.  James was
not present.  

            6.         James filed an amended petition in the
Panola County action on December 16.

            7.         On January 5, 2010, James’ Louisiana
attorney presented objections to the form and content of the proposed Louisiana
divorce decree.  A hearing was held on
the following day and the Louisiana court, rejecting James’ objections, entered
a divorce decree.  At some point thereafter,
James appealed the grant of the Louisiana divorce decree.

            8.         On January 11, Candice caused a copy of
the Louisiana divorce decree to be filed with the District Clerk in Panola
County.

            9.         On January 19, the judge in Panola
County entered an order overruling Candice’s special appearance and plea in
abatement, finding that it had “subject matter jurisdiction over the parties
and all matters in controversy . . . .” 

            10.       A hearing on the merits of the Panola
County action was held on February 4 and a final decree of divorce was entered
March 12, which dissolved the marriage, divided the community property, and
adjudicated custody of the children.[3]
Candice filed an appeal of that judgment of divorce.

            11.       The Louisiana Court of Appeals for the
Third Circuit issued an opinion on December 8, 2010, affirming the judgment of
divorce entered by the St. Landry Parish, Louisiana, District Court.

            In
her sole point of error, Candice contends that the trial court erred by denying
her special appearance and objections to the court’s jurisdiction to adjudicate
custody, maintaining that Louisiana, not Texas, was the children’s home state
and, therefore, the Texas trial court lacked subject-matter jurisdiction to
adjudicate custody. 

            We
affirm the Texas trial court’s judgment of divorce because no other court of
any other state would have jurisdiction under Section 152.201 of the Texas Family
Code.

At the time the Texas suit was filed, no other state had jurisdiction under the
UCCJEA

            Both Texas and Louisiana have adopted
the UCCJEA.[4]  

            Subject-matter jurisdiction exists
when the nature of the case falls within a general category of cases that the
court is empowered, under applicable statutory and constitutional provisions,
to adjudicate.  In re Barnes, 127 S.W.3d 843, 846 (Tex. App.—San Antonio 2003, no
pet.) (citing McGuire v. McGuire, 18
S.W.3d 801, 804 (Tex. App.—El Paso 2000, no pet.)). Subject-matter jurisdiction
is essential to the authority of a court to decide a case.  Tex.
Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex.
1993).  Subject-matter jurisdiction over
custody issues is governed by the UCCJEA.  Tex.
Fam. Code Ann. §§ 152.001–.317 (Vernon 2008); Barnes, 127 S.W.3d at 846. 
That Act provides mandatory jurisdictional rules for an original child
custody proceeding.[5]  Tex.
Fam. Code Ann. §§ 152.001–.317; Barnes,
127 S.W.3d at 846.  A Texas court must
have subject-matter jurisdiction under the UCCJEA in order to make a child custody
determination.  

            Whether
a court has subject-matter jurisdiction is a question of law that we review de
novo.  Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226
(Tex. 2004).  Subject-matter jurisdiction
is never presumed and cannot be waived.  Tex. Ass’n of Bus., 852 S.W.2d at 442–44.

            Section
152.201 of the Texas Family Code governs the initial child custody jurisdiction
of courts in the State of Texas and allows Texas courts to make an initial
child custody determination only if the statutory requirements are
fulfilled.  In making a determination
regarding jurisdiction, the location of the parties and the children is a vital
factor.  Because the parties and the
children were not within either Texas or Louisiana during the entire period of
time set out in the above chronology of events, we must first determine the
critical date upon which inquiry of the surrounding circumstances of the
parties should be applied.  Jurisdiction
is determined based upon circumstances existing at the time suit is filed in
Texas.  Brilliant, 86 S.W.3d at 692. 
Here, suit was filed in Panola County, Texas, on July 29, 2009.  Accordingly, we look to the status of the
parties and the children on that date: 
July 29, 2009.  See id. 


            We
will summarize the four possible bases of jurisdiction in Texas and then
examine whether any of the four authorizes a Texas court to conduct this
custody determination.

            (1)        Home State Jurisdiction—Under the
UCCJEA, a state has jurisdiction if that state was one in which a child lived
with a parent for at least six consecutive months immediately before the
commencement of a child custody proceeding or was the home state of the child
within six months before the commencement of the proceeding and the child is
absent from the state, but a parent continues to live in that state.  See
Tex. Fam. Code Ann. §§
152.102(7), 152.201(a)(1).  The word
“lived” connotes physical presence.  Powell v. Stover, 165 S.W.3d 322, 326
(Tex. 2005).  In Powell, the Texas Supreme Court explained that the Legislature used
the word “lived” to avoid “complicating the determination of a child’s home
state with inquiries into the states of mind of the child or the child’s adult
caretakers.”  Id. (citing Escobar v.
Reisinger, 64 P.3d 514, 517 (N.M. Ct. App. 2003)).  The UCCJEA suggests that the child’s physical
location is the central factor to be considered when determining the child’s
home state.  Id.

             Both James and Candice concentrate their
arguments on the issue of home state jurisdiction.  Although James adamantly argues that Texas
was the children’s home state, Candice disputes that.  Candice maintains that the children’s
four-month stay in Texas was merely a temporary stay, making Louisiana the
children’s home state.[6]  The first cogent issue in determining whether
Texas was the home state is a determination of whether the children were
physically present in Texas for six consecutive months preceding James’ filing
on July 29, 2009.  James testified that
he, Candice, and the children visited his parents in Texas in late January
2009, “preempting [sic] to talking about moving into a house down the street
from them,” and that the family “started to move [to Texas] in February.”  However, James clarified that the children
moved to Texas on March 21, 2009, “[w]ith visitations [in Texas] before
then.”  We observe that neither a “start
to move” nor visitations within the State suffice for this determination.  Therefore, we determine that the evidence
presented by James is that the children moved to Texas on March 21.  Candice testified that the children did not
move to Texas until April 14, 2009 (in her words, to begin a “new start” in
their lives).  James and Candice concur
that Candice and the children moved from Texas back to Louisiana on August 9,
2009.  Irrespective of whether the
children’s move to Texas occurred in March or in April, six months had not
elapsed before July 29, when James filed his petition for divorce in Panola
County.

            Both
parties cite to Powell as an
applicable authority in this case.  In Powell, Russell and Sonja Powell and
their child moved from Texas to Tennessee; after staying in Tennessee for ten
months, Sonja returned to Texas, bringing the child with her, and filed for
divorce and child custody determination in Texas, Russell remaining in
Tennessee.  Id. at 323–24.  Sonja argued
that the child’s stay in Tennessee was only a temporary absence from Texas and
that Texas remained the child’s home state throughout his stay in Tennessee
because Sonja intended to be there only temporarily.  Id.
at 326.  In finding Tennessee to be the
child’s home state, the court rejected Sonja’s arguments because the child’s
physical presence in Tennessee for more than six consecutive months (not the
parent’s state of mind concerning the permanence of the move) was the central
factor in determining a child’s home state under the UCCJEA.  Id.

            The Powell case is distinguishable from the
present case because the child lived in Tennessee for six consecutive months
and a parent lived in Tennessee at the time the Texas suit was filed.  See
also Huffstutlar v. Koons, 789
S.W.2d 707 (Tex. App.—Dallas 1990, orig. proceeding).  Here, at the time of commencement of the
suit, neither did the children live in Texas for six consecutive months nor did
any member of the family (either the parents or the children) live in
Louisiana. 

            As
stated above, we determine jurisdiction based upon the circumstances as they
existed on July 29, 2009, the date that the Texas action was filed.  See Brilliant,
86 S.W.3d at 692.  On that date, no one
impacted by the dissolution of the marriage (not Candice, not James, and none of
the children) lived in Louisiana.  The
subsequent decision by Candice to return to Louisiana did not abrogate that
fact.  Therefore, Louisiana could not
have been the children’s home state.  On
the other hand, the record establishes that the children were not physically
present in Texas for six consecutive
months before July 29, 2009.  Rather, the
record reflects that the children lived in Texas for (at most) five months
before that date, although James and Candice had discussed in January a move to
Texas, and that the children visited Texas frequently between February and
March 21, 2009, before moving to Texas. 
Such sporadic presence in Texas does not satisfy the requirement that
the children be physically present in Texas for six consecutive months.  See
Tex. Fam. Code Ann. §§ 152.102(7),
152.201.  

            The
facts clearly show that although Louisiana was not the home state of the
children at the date of commencement, neither was Texas.  

            (2)        Significant Connection Jurisdiction—A
Texas court may also have jurisdiction if no court from another jurisdiction
qualifies as the home state of the child under (1) above or the home state
court of the child has declined to exercise jurisdiction on the ground that
such court is an inconvenient forum or due to unjustifiable conduct (such as
kidnapping) by a person seeking to invoke that court’s jurisdiction, and:  (1) the child and at least one parent have a
significant connection with Texas other than mere physical presence; and (2)
“substantial evidence is available [in Texas] concerning the child’s care,
protection, training, and personal relationships.”  See
Tex. Fam. Code Ann. §§ 152.201(a)(2),
152.207–.208.

            Both
parties also cite to Brilliant as
applicable.  In Brilliant, Kristen, Regi, and their child lived in Massachusetts
from the child’s birth in June 1999 until April 16, 2000, when the father moved
to Texas, his childhood and family home. 
Brilliant, 86 S.W.3d at 682–83.  Kristen and the child joined the father in
Texas in June 2000, with Kristen applying for jobs and having the child’s
immunization records forwarded to Texas. 
Id.  Just a few weeks later, after Kristen
expressed her intention to take the child and permanently return to
Massachusetts, the father filed suit on July 19, and five days later, served Kristen
with an order restraining her from removing the child from the county.  Id.
at 683.  On July 27, Kristen and the child moved back
to Massachusetts, in violation of the restraining order.  Id.  Kristen filed a plea to the jurisdiction,
arguing that the child had spent only forty-five days in Texas, but she did not
appear for the hearing.  Id. 
The trial court found that although Texas was not the child’s home
state, it had jurisdiction over the child through significant connections.  Id.  In denying Kristen’s motion for new trial and
reconsideration, the trial court found that “[t]o grant the new trial and to
decline jurisdiction, even on an inconvenient forum basis would be to condone
[Kristen’s] blatant disregard for court orders . . . .”  Id.  The trial court’s decision was upheld on
appeal. 

            As
opposed to Brilliant, here, all
parties appeared and presented evidence and no one has violated a restraining
order.  Due to the fact that both parties
focused on attempts to establish home state jurisdiction (both at trial and on
appeal), there is no evidence in the record regarding the children’s
significant connections to Texas or regarding their care, protection, training,
or personal relationships.

            Here,
the record indicates that the children lived in Texas for about four months,
that they frequently visited Texas before moving here, and that James and
several coworkers stayed at a house in Texas during their “week on, week off”
work week.  In addition, it was shown
that James’ parents also lived in Texas, but no evidence was presented that
this family relationship had a great impact on the children.  These circumstances do not satisfy to provide
substantial evidence of the children’s care, protection, training, and personal
relationships while in Texas.  Therefore,
Texas cannot exercise original jurisdiction under the significant connection
provision. 

            (3)        More Appropriate Forum Jurisdiction—A
Texas court has jurisdiction if all courts having jurisdiction under (1) or (2)
above have declined to exercise jurisdiction, finding Texas the more
appropriate forum.  See Tex. Fam. Code Ann.
§ 152.201(a)(3).

            Texas
courts do not acquire jurisdiction under this provision because there is no
evidence that all courts having jurisdiction have declined to exercise
jurisdiction or found that Texas courts are the more appropriate forum.

            (4)        Default Jurisdiction—A Texas court has
jurisdiction if no court of any other state would have jurisdiction under (1),
(2), or (3) above.  See Tex. Fam. Code Ann.
§ 152.201(a)(4).

            Because
there are no courts of any other states having jurisdiction in this case, the
trial court properly exercised subject-matter jurisdiction to adjudicate
custody of the children under the default provisions of Section 152.201(a)(4)
of the Texas Family Code.  Accordingly,
we overrule Candice’s point of error and affirm the trial the court’s judgment
of divorce. 

A.         Louisiana
judgment, competing jurisdiction, and comity

            Several weeks after James commenced
the Texas divorce and custody action, Candice, on September 10, 2009, filed a
divorce and custody action of her own in St. Landry Parish, Louisiana
(attaching a copy of James’ Texas original petition to her pleading).  That case was docketed as number 09-C-4858-B
in the Louisiana court.  A hearing on
Candice’s petition in the Louisiana case was scheduled December 7, 2009.  Although James sent a handwritten pro se
letter to the Louisiana court requesting a continuance, the motion was denied,
statedly because of James’ failure to provide a return address or other means
of contacting him regarding an alternate hearing date.  A hearing on the petition was held, but
neither James nor anyone purporting to represent him was present for the
hearing.  Marsalis v. Marsalis, 52 So.3d 295, 299 (La. App. 3 Cir. 12/8/10). 

            Judging
from the recitations in the reported case mentioned below, the evidence
produced at the hearing was that Candice and the children considered Louisiana
their home, that the children had spent their entire lives (except for the
months spent in Texas) living in Louisiana, and that she provided evidence
regarding the past and future care, protection, training, and personal
relationships with emphasis on the connections these things had with Louisiana.[7]  Based on the evidence before it, the trial
court ruled that Louisiana was the children’s home state.  The court’s judgment adjudicated custody and
awarded spousal support, child support, and the use and occupancy of the
marital residence in Louisiana.[8]  The judgment was affirmed on appeal to the
Court of Appeals of Louisiana, Third Circuit. 
Id. at 298–99.  Other than taking note of James’ letter, the
trial court made no inquiry into the circumstances or jurisdictional basis of
the previously filed Texas action.

            In
an effort to not ignore the benefits of comity,[9] we
have researched and examined the Louisiana appellate opinion in Marsalis.[10]  Apparently, James’ sole point on appeal in
that case complained of the entry of a judgment before staying its proceedings
and communicating with the Texas court, a mandate of the UCCJEA.[11]  Rather than finding that Louisiana possessed
home state jurisdiction (as found by the Louisiana trial court), the court of
appeals held that Louisiana had jurisdiction based upon significant
connections.  The Louisiana appellate
court noted that James’ letter failed to make any allegations regarding the
children’s presence or connections in Texas, found that “the only evidence
presented supports a determination that no other state, including Texas, had
jurisdiction [over the children],” and stated that “the evidence indicates that
the children and [Candice] had significant connections to [Louisiana] other
than mere physical presence.”  52 So.3d
at 299.[12]  Despite the trial court making no inquiry
beyond the pleadings into the previously filed Texas action, the court held
that the Louisiana trial court was not required to stay its proceedings or
contact the Texas trial court under the UCCJEA’s simultaneous proceeding
provision because there was no evidence that Texas had jurisdiction
substantially in accordance with the UCCJEA.  Id.
at 297–99; La. Rev. Stat. Ann. § 13:1818;
Tex. Fam. Code Ann. § 152.206.
 Interestingly, however, there was
likewise no evidence given that the Texas court did not have jurisdiction.

            Here,
the Texas trial court had the advantage of hearing testimony and evidence
regarding the children from both James and Candice, whereas the Louisiana
courts only had evidence presented by Candice. 
As per our ruling above, on the date James filed his petition in Texas,
neither parent nor any of the children lived in Louisiana and no state other
than Texas would have had jurisdiction under the UCCJEA.  See
Tex. Fam. Code Ann. § 152.201;
La. Rev. Stat. Ann. § 13:1813.
 Therefore, at the time Candice filed her
petition in Louisiana, Texas already had jurisdiction in accord with the UCCJEA
under Section 152.201(a)(4), although it appears that the Louisiana court did
not take that into account.  Because
Texas already had jurisdiction at the time the Louisiana suit was filed, the
Louisiana trial court could not exercise jurisdiction over the case.  See
Tex. Fam. Code Ann. § 152.206;
La. Rev. Stat. Ann. §
13:1818.  Accordingly, the Louisiana
trial court’s judgment and child support and custody orders were entered
without jurisdiction.  See Tex.
Fam. Code Ann. § 152.206; La.
Rev. Stat. Ann. § 13:1818.  

            The
Marsalises find themselves in a situation of competing custody orders, parallel
appeals, relitigation of custody issues, and interstate jurisdictional
competition—the very problems the UCCJEA was enacted to prevent.  Tex. Fam.
Code Ann. §§ 152.001–.317.  Since
the support orders entered in the two respective actions for divorce do not
comport with each other, it is extremely likely that confusion as to the
enforceability of each will become an issue in the future.  Each of the trial courts became aware of the
pendency of custody actions in the other state. Perhaps this judicial conflict
would not have arisen if either trial court had seen fit to make contact with
the other (even if they were not absolutely required under the UCCJEA to do so
and even if such a communication between the courts of the respective states
did not result in a resolution of the conflict).[13] 

            We
affirm the judgment of the trial court.

 

            

                                                                        Bailey
C. Moseley

                                                                        Justice

 

CONCURRING OPINION

            This
result should be avoided.  Some issues
can best be resolved by a negotiated resolution, and this statute gives the
trial judges the opportunity to do just that. 
Trial courts in different jurisdictions are encouraged to communicate
when it is known that custody matters are filed in more than one state.  After that conference, a trial court may
decline to exercise jurisdiction if it finds that another state is the more
appropriate forum.  Tex. Fam. Code Ann. §§ 152.201(a)(2),
152.206(b) (Vernon 2008).  We have
searched to determine if, as an appellate court, we have the authority to
decline jurisdiction and resolve this matter relying on the doctrine of comity
so that these parties would have only one court to answer to.  But our function is to review the trial court
record for error, not to attempt to make a policy determination that even though
the trial court order is legally correct, we should reverse that order based on
our judgment of what would serve the best interest of all parties.  

            Having
found jurisdiction in the trial court in Texas, where the first action was
filed, we may not simply “throw it back to Louisiana.”  I concur in the judgment.

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          January
25, 2011

Date Decided:             March
18, 2011

 











[1]The
Louisiana appellate decision, mentioned hereinafter, indicates that Candice
testified in the Louisiana hearing that the move occurred in March.

 





[2]It
is long well settled that the six-month residency in the State of Texas set out
in Section 6.301 of the Texas Family Code is not a jurisdictional requirement.  Tex.
Fam. Code Ann. § 6.301 (Vernon 2006); Perry v. Copeland, 323 S.W.2d 339, 342 (Tex. Civ. App.––Texarkana
1959, writ dism’d) (citing Aucutt v.
Aucutt, 122 Tex. 518, 62 S.W.2d 77 (1933); Ex parte Tyler, 152 Tex. 602, 261 S.W.2d 833, 834 (1953)).





[3]On
September 10, 2009, Candice filed a divorce and custody action in
Louisiana.  However, James filed the
Texas proceeding first, when all the parties and children resided in Texas;
therefore, Section 152.206, the Texas Family Code section governing
simultaneous proceedings in different states, does not apply to bar Texas from
exercising its jurisdiction over this matter. 
See In re Presley, 166 S.W.3d
866, 868 (Tex. App.––Beaumont 2005, orig. proceeding); In re Brilliant, 86 S.W.3d 680, 690 (Tex. App.––El Paso 2002, no
pet.). 

 





[4]The
pertinent sections of Louisiana’s version of the UCCJEA are substantially the
same as those adopted by Texas. La. Rev.
Stat. Ann. §§13:1801, 13:1802, 13:1813, 13:1818 (West, Westlaw current
through 2011).

 





[5]This
is a divorce “proceeding in which legal custody, physical custody, or
visitation with respect to a child is an issue”; therefore, it is a child
custody proceeding as that term is defined by Section 152.102(4) of the Texas
Family Code.  Tex. Fam. Code Ann. § 152.102(4). 





[6]The
evidence does not support a conclusion that the removal of the family from
Louisiana to Texas was only a temporary move; the characterization of the move
to Texas from Louisiana as being “temporary” was gleaned solely from the
actions of the parties taken after they had permanently moved to Texas.





[7]We
observe that while Candice apparently introduced evidence of some significant
connections to Louisiana in the hearing on her Louisiana divorce action, those
significant connections did not apparently exist on the date the Texas action
for divorce was filed; they had ceased during the stay in Texas and apparently
resumed after Candice and the children returned to Louisiana.   





[8]In
her appeal, Candice does not argue that the Texas courts should defer to the
Louisiana judgment.

 





[9]“The
lack of comity with respect to custody decrees of other states is a mischief
the law [that is, the UCCJEA’s predecessor, the Uniform Child Custody
Jurisdiction Act  (UCCJA)] was enacted to
remedy.”  Waltenburg v. Waltenburg, 270 S.W.3d 308, 314–15 (Tex. App.––Dallas
2008, no pet.) (quoting Greene v. Greene,
432 So.2d 62, 65 (Fla. Dist. Ct. App. 1983)). 
By adopting the UCCJA (and subsequently the UCCJEA), the Legislature “has
effectively commanded the courts to defer to a sister state which has already
correctly assumed jurisdiction in a child custody case when that other state exercises its jurisdiction in a fashion
consistent with the Act.”  Id.  We agree with the logic set forth by the
Florida court in Greene.

 





[10]Sections
152.201(a)(4) and 152.206 of the Texas Family Code correspond to Louisiana
statutes 13:1813(A)(4) and 13:1818, respectively.  The language of the referenced Louisiana
statutes is substantially similar, if not identical, to the language of the
corresponding Texas statutes.

 





[11]Compliance
by the Louisiana trial court with this may well have avoided the conflicts
which have arisen here.  During a
hearing, the Panola County trial court observed that “the easiest thing for me
to do is just throw it back to Louisiana and let them fool with it.”  





[12]We
note that the strong and reasoned dissent by Justice David E. Chatelin of the
Louisiana Third Circuit Court of Appeals expresses many of the same concerns
about the jurisdiction of the Louisiana courts that have been raised and
discussed here.  Justice Chatelin would
have reversed the Louisiana trial court and required it to abate its
proceedings, confer with the Texas court, and dismiss the case unless Texas
declined jurisdiction on the basis of Louisiana being a more convenient forum.





[13]The
Louisiana court of appeals acknowledges that the Louisiana trial judge did not
contact the Texas trial court, and the record reflects that although the Texas
trial court knew of the pending Louisiana action, there is nothing in the
record indicating that it communicated with the Louisiana trial court.  Marsalis,
52 So.3d at 297–98.