# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-547-CV

## In re Annette Shurtz

### ORIGINAL PROCEEDING FROM BASTROP COUNTY

### M E M O R A N D U M   O P I N I O N

This original proceeding arises from a custody dispute; relator Annette Shurtz is the maternal grandmother of the children who are the subject of the dispute. The children's father, real party in interest James Hughes, initiated the custody proceeding seeking to enforce and modify the trial court's initial custody determination. Shurtz responded to the enforcement action and intervened in the modification proceeding, asserting by plea to the jurisdiction that the trial court lacks subject-matter jurisdiction over the proceeding. Specifically, she argued that the initial custody determination is void for lack of subject-matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), and as a result, the court lacks subject-matter jurisdiction to enforce or modify the order. Shurtz has filed a petition for writ of mandamus, complaining that the trial court abused its discretion in denying her plea to the jurisdiction. Based on the record presented, we agree. We conditionally grant the writ.

## BACKGROUND

James Hughes and Rachel Shurtz have never married, but have two children.[1] G.H., currently four years old, was born in Texas, though the family moved to Kansas shortly after his birth. L.H. was born in Kansas and is currently two years old.[2] In June 2010, Hughes left Rachel and the children in Kansas and moved to Texas. On July 31, 2010, Hughes met Rachel and the children in Oklahoma. At this meeting, Rachel voluntarily relinquished possession of the children to Hughes, and he returned to Texas with the children.

On August 5, 2010, less than a week after the children arrived in Texas, Hughes filed a pro se petition in a suit affecting the parent-child relationship (SAPCR) in Bastrop County (the "initial SAPCR petition"). In the initial SAPCR petition, Hughes requested that the trial court appoint him sole managing conservator of the children. The petition states that Rachel does not live in Texas, is homeless, and "has no permanent address." Service of citation on Rachel is directed to an address in Overland Park, Kansas. An addendum attached to the initial SAPCR petition provides in relevant part:

> After the birth of our second child, the birth mother, Rachel, began using methamphetamines. She is also medically diagnosed as "Bipolar" and she ceased taking her prescribed medication due to her methamphetamine usage. Rachel's mother and I have basically been the primary caregivers for both kids since L.H. was born in October 2009.
>
> I am a lifelong resident of Bastrop County, Texas, however[] I have been working in Kansas for the past couple of years. In June 2010, I traveled to Texas for work.

---

[1] Because the relator and the children's mother have the same last name, we will refer to the children's mother by her first name in order to avoid confusion.

[2] These background facts are based on undisputed testimony of Hughes and Rachel from the hearing on the plea to the jurisdiction.

During this time, Rachel's mother was the primary caregiver for the children with Rachel being involved with their care at times. Since leaving Kansas, I have been in contact with Rachel and the kids and have voiced my desire to have the kids with me in Texas as I am concerned for their safety due to her drug use. Rachel's mother will not allow Rachel to live with her due to her drug use. She has been living with random people since I left Kansas and has had [L.H.] in multiple homes in the short time I have been in Texas. I have concerns that Rachel's drug use and sporadic living conditions are not safe for my children.

At the end of July 2010, Rachel contacted me to tell me that I could have the kids for a while so that she could "get clean." She stated I could have the kids on the condition that I give her $200 cash. On Saturday, July 31st, I met Rachel, gave her $200 and brought my children back to Texas.

Rachel was served with the initial SAPCR petition on October 29, 2010, in Smithville, Texas. On April 18, 2011, she and Hughes jointly appeared before the trial court and requested a final order appointing them joint managing conservators and restricting the geographic residence of the children to Bastrop County and the contiguous counties thereto, plus Hays and Williamson Counties. The trial court orally granted their requested relief and asked them to prepare a draft order for the court's signature. Sometime after this joint appearance, but before the trial court signed the final order on May 4th, Rachel took the children and returned to Kansas. The enforcement and modification proceeding underlying this mandamus then ensued.

On May 23, 2011, Hughes filed a writ of habeas corpus, seeking to recover possession of the children from Rachel and her mother, Shurtz, in Kansas. The same day, Hughes also filed a motion for enforcement of possession or access and order to appear, request for writ of attachment, and petition to modify parent-child relationship, requesting that the court appoint him sole managing conservator. Upon service of these pleadings, Rachel and Shurtz returned the children to Hughes. On June 17, 2011, Shurtz filed a response to Hughes's enforcement action, including a plea to the

3

jurisdiction.[3] Shurtz also filed a petition in intervention in the modification action filed by Hughes, requesting that she be appointed sole managing conservator.

On June 22, 2011, the trial court held an evidentiary hearing on Shurtz's plea to the jurisdiction. At the conclusion of the hearing, the trial court orally denied the plea. In this original proceeding, Shurtz asserts that the trial court abused its discretion in denying her plea to the jurisdiction because (1) Kansas, not Texas, had subject-matter jurisdiction under the UCCJEA to make the initial custody determination, and accordingly, the trial court now lacks continuing, exclusive jurisdiction to modify or enforce the order; (2) she was denied a timely opportunity to object to the issue of subject-matter jurisdiction in the initial SAPCR proceeding because she was not served with the initial SAPCR petition; and (3) the trial court failed to decline to exercise jurisdiction based on Hughes's unjustifiable conduct.

**STANDARD OF REVIEW**

Mandamus will issue only to correct a clear abuse of discretion or a violation of a duty imposed by law when there is no other remedy. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). Subject-matter jurisdiction is essential to the authority of a court to decide a case; it is never presumed and cannot be waived. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 442-44 (Tex. 1993). Subject-matter jurisdiction in this case is predicated upon the UCCJEA. A writ of mandamus is an appropriate means to require a trial court to comply with the UCCJEA's jurisdictional requirements. *Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005).

---

[3] Rachel filed a counter-petition to Hughes's petition to modify parent-child relationship, requesting the court appoint them joint managing conservators without geographic restriction.

The issue in this mandamus action is whether the trial court abused its discretion in denying Shurtz's plea to the jurisdiction. A trial court abuses its discretion if it fails to analyze or apply the law correctly. *Walker*, 827 S.W.2d at 840. Construction of the UCCJEA's jurisdiction as codified in the Texas Family Code is a question of law that we review de novo. *Powell*, 165 S.W.3d at 324-25. Also, whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex. 2004).

A collateral attack, unlike a direct appeal, is "an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose." *Kendall v. Kendall*, 340 S.W.3d 483, 503 (Tex. App.—Houston [1st Dist.] 2011, no pet.). If a court lacks subject-matter jurisdiction to render a judgment, the judgment is void and subject to collateral attack. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). In the present modification and enforcement proceedings, Shurtz is collaterally attacking the trial court's initial custody determination because she asserts that the trial court lacked subject-matter jurisdiction to enter the initial custody orders.

When reviewing a collateral attack, we presume that the judgment under attack is valid. *Stewart v. USA Custom Paint & Body Shop*, 870 S.W.2d 18, 20 (Tex. 1994). If the record in the underlying cause does not negate the existence of facts authorizing the court to render the judgment, the law conclusively presumes that such facts were established before the court when such judgment was rendered. *White v. White*, 179 S.W.2d 503, 506 (Tex. 1944); *see also Alfonso v. Skadden*, 251 S.W.3d 52, 54 (Tex. 2008) (holding that presumption supporting judgments does not apply when record affirmatively reveals jurisdictional defect). Accordingly, our review is limited to determining whether the record in the initial custody determination affirmatively

5

and conclusively negates the existence of jurisdiction. *In re K.M.P.*, 323 S.W.3d 601, 603 (Tex. App.—Austin 2010, pet. denied). We consider only the face of the record and do not presume that something omitted from the clerk's record might have supported jurisdiction when the record in the underlying proceeding establishes otherwise. *Alfonso*, 251 S.W.3d at 55 ("We disagree with the court of appeals that it should have presumed something that the record in the underlying proceeding repeatedly showed was not true.").

## DISCUSSION

Under the UCCJEA, as codified in the Texas Family Code, a court that makes an initial custody determination generally retains exclusive jurisdiction over that determination, including any action to modify or enforce its terms. Tex. Fam. Code Ann. § 152.202 (West 2008). A trial court has subject-matter jurisdiction to make an initial custody determination only if the requirements of section 152.201of the family code are met. *Id*. § 152.201 (West 2008). However, section 152.201 provides and prioritizes several bases for establishing subject-matter jurisdiction. *Powell*, 165 S.W.3d at 325. Under this prioritization, a court of the child's home state always has primary jurisdiction over initial custody proceedings. *Id*. Accordingly, we first determine whether the record in the suit for the initial custody determination affirmatively and conclusively negates the existence of the trial court's home-state jurisdiction.

A child's home state is:

> the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of the child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with a parent or a person acting as a

parent. A period of temporary absence of a parent or person acting as a parent is part of the period.

*Id*. § 152.102(7) (West 2008). A Texas court has home-state jurisdiction if:

[1] this state is the child's home state on the date of the commencement of the proceeding or [2] this state was the child's home state within six months of the commencement of the proceeding, and the child is absent but a parent or a person acting as parent continues to reside in the state.

*Id*. § 152.201(a)(1). "Commencement" means the filing of the first pleading in a proceeding. *Id*. § 152.102(5) (West 2008). Thus, home-state jurisdiction is based on the circumstances as they existed on the date suit for an initial custody determination is filed. *See In re K.M.P.*, 323 S.W.3d at 605.

The SAPCR petitioner has the burden to allege facts that affirmatively show the trial court has subject-matter jurisdiction under the UCCJEA. *In re Brilliant*, 86 S.W.3d 680, 684 (Tex. App.—El Paso 2002, no pet.); *see also* Tex. Fam. Code Ann. § 152.209 (West 2008) (requiring each party in its initial pleading to provide trial court with information regarding children's residence over past five years). In his initial SAPCR petition, Hughes provides very limited information concerning the parties' and children's past and current addresses. However, Hughes's initial SAPCR petition clearly states that he had been working and living in Kansas for the "past couple of years" and in June 2010 traveled to Texas for work. On July 31, 2010, Hughes brought the children, who had remained in Kansas when he left, to Texas. Thus, the initial SAPCR petition, filed on August 5, 2010, affirmatively demonstrates that the children had not lived with a parent in Texas for the requisite six months immediately before commencement of the proceeding. Accordingly, the

7

petition affirmatively establishes that the trial court did not have home-state jurisdiction over the initial custody proceeding.

Hughes does not argue that the trial court had home-state jurisdiction to make the initial custody determination. Rather, Hughes contends that the trial court had subject-matter jurisdiction over the initial custody proceeding pursuant to one of the UCCJEA's alternative bases for subject-matter jurisdiction, primarily significant-connection jurisdiction under section 152.201(a)(2). Tex. Fam. Code Ann. § 152.201(a)(2). Under the UCCJEA's prioritization of jurisdictional bases, a trial court lacking home-state jurisdiction may alternatively assert subject-matter jurisdiction on the basis of significant-connection jurisdiction when (1) the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence and (2) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships. *Id*. However, this alternative basis for subject-matter jurisdiction only applies if (1) a court of another state would not have home-state jurisdiction or (2) a court with home-state jurisdiction has declined to exercise jurisdiction on grounds that Texas is the more appropriate forum under section 152.207 (inconvenient forum) or section 152.208 (jurisdiction declined by reason of conduct).[4] *Id*.; *In re K.M.P.*, 323 S.W.3d at 604-05; *In re Barnes*, 127 S.W.3d

---

[4] The record from the initial custody proceeding does not contain any evidence that would support a finding that a court of another state declined jurisdiction in favor of Texas under section 152.201(a)(2), and it would be unreasonable to presume otherwise. *See In re K.M.P.*, 323 S.W.3d 601, 605 (Tex. App.—Austin 2010, pet. denied) (noting in collateral attack that it was not reasonable to presume that court declined to exercise jurisdiction when there were no findings or support in record to this effect). Hughes argues that on May 31, 2011, a state district court in Kansas declined to exercise jurisdiction in a guardianship proceeding over G.H. initiated by Shurtz. However, the Kansas order, entered more than three weeks after the Texas court's initial custody orders, indicates that the court declined jurisdiction because the Texas court had previously determined custody, not

843, 848 (Tex. App.—San Antonio 2003, no pet.). Consequently, before we can determine whether the trial court could have properly asserted significant-connection jurisdiction, we must consider whether a court of another state would have had home-state jurisdiction.

Having asserted facts that affirmatively negate Texas as the children's home state, Hughes did not allege or plead any facts establishing that Kansas or some other state lacked home-state jurisdiction. Therefore, Hughes failed to meet his burden to allege facts sufficient to show that the trial court had subject-matter jurisdiction under any alternative basis. *See In re Zavala*, No. 04-10-00835-CV, 2010 Tex. App. LEXIS 10094, at *5 (Tex. App.—San Antonio Dec. 22, 2010, orig. proceeding) (concluding that trial court did not have subject-matter jurisdiction when petitioner failed to establish that Ohio was not home state or had declined to exercise jurisdiction). If this were a direct appeal of the initial custody order, our inquiry would likely end here. *See id*. However, because this is a collateral attack on the initial custody determination, we must determine if the record affirmatively and conclusively negates the existence of significant-connection jurisdiction. *See In re K.M.P.*, 323 S.W.3d at 603 ("We limit our review to determining whether the record affirmatively and conclusively negates the existence of jurisdiction, not whether the court otherwise erred in rendering its judgment."). This includes, as a threshold matter, a determination of whether the record affirmatively and conclusively demonstrates that a court of another state would have had home-state jurisdiction.

because Texas was a more appropriate forum under section 152.207 or 152.208. *Cf.* Tex. Fam. Code Ann. § 152.203 (West 2008) (requiring court to refrain from modifying child-custody determinations made by courts of other states); Kan. Stat. Ann. § 38-1350 (2011) (identical UCCJEA provision adopted by Kansas). The subsequent Kansas order is not part of the record in the underlying initial custody determination and, accordingly, has no bearing on whether the Texas court had jurisdiction to make the initial custody determination.

In his initial SAPCR petition, Hughes stated that before coming to Texas in June 2010 he had lived in Kansas for several years and had been a primary caregiver to his children since October 2009. Further, Hughes stated that when he left Kansas the children remained with Rachel's mother, with Rachel "being involved in their care at times." Hughes remained in contact with Rachel and the children and informed Rachel that he wanted the children with him in Texas. On July 31, 2010, he met Rachel and the children and brought the children back to Texas. The petition clearly provides that at the time of filing Rachel was not living in Texas. Though the petition states that Rachel is homeless, it directs service of citation on Rachel at an address in Kansas. Hughes's allegations establish that at the commencement of the initial custody proceeding Kansas had been the children's home state within the past six months and a parent continued to reside there. Accordingly, the initial SAPCR petition affirmatively establishes that Kansas, not Texas, had home-state jurisdiction on the date of the commencement of the proceeding. *See Alfonso*, 251 S.W.3d at 53 (noting that "filing affirmatively established that Spain was [respondent's] 'home state' and Texas was not"). Because a state with home-state jurisdiction has priority under the UCCJEA, if the allegations in the petition are conclusive, the trial court could not have asserted subject-matter jurisdiction over the initial custody proceeding under any of the UCCJEA's alternative bases, including significant-connection jurisdiction.

We now turn to the remaining record in the underlying initial custody determination to determine whether the allegations in the initial SAPCR petition are uncontroverted, such that the record as a whole affirmatively and conclusively reveals a jurisdictional defect. *See id.* at 54 (noting that court should not presume something omitted from record might have supported

10

jurisdiction when record otherwise negates jurisdiction). When entering its order on the initial custody determination, the trial court did not make any factual findings relevant to its subject-matter jurisdiction. The order simply states, "The Court finds that it has jurisdiction of this case and all of the parties." The transcript of the parties' joint appearance on April 18, 2011, shows that no evidence was received by the trial court regarding its jurisdiction over the case. Neither party testified as to how long the children had lived in Texas or where the parties were residing at the time the proceeding commenced. The only evidence received by the trial court with respect to jurisdiction was Hughes's testimony that he had "lived in Bastrop County for almost a year now." Accordingly, the allegations in Hughes's initial SAPCR petition are uncontroverted, and thus, the record conclusively reveals a jurisdictional defect.

Because the record affirmatively and conclusively negates the trial court's subject-matter jurisdiction over the initial custody determination, the trial court lacks continuing, exclusive jurisdiction over the current enforcement and modification proceeding. *See* Tex. Fam. Code Ann. § 152.202. The trial court erred in denying Shurtz's plea to the jurisdiction because subject-matter jurisdiction cannot be waived and can be raised at any time. Having determined that the trial court lacks subject-matter jurisdiction, we do not consider the other issues raised by Shurtz in this mandamus. We conditionally grant the petition for writ of mandamus and order the trial court to withdraw the order in suit affecting the parent child relationship entered on May 4, 2010, and to dismiss the pending enforcement and modification proceeding on the same within twenty days of our opinion. If the trial court fails to comply, we will issue the writ.

11

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Filed:   December 30, 2011