In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00110-CV
_____

IN THE INTEREST OF J.K. AND S.K.

On Appeal from the County Court at Law No. 3
Montgomery County, Texas
Trial Cause No. 18-03-03595-CV

MEMORANDUM OPINION

This appeal arises from the trial court's ruling in a parental-rights termination case terminating "Father's" rights to raise his twin daughters, "Cassie" and "Katie."[1] While Father raises three issues in his appeal, his primary complaint is that there is not enough evidence in the record to support the trial court's decision terminating his parental rights. We affirm.

---

[1] To protect the identity of the children who are the subject of the suit, we use pseudonyms for the names of all family members whose rights are at issue.

1

Background

Father raises three issues in his appeal from the trial court's final order.[2] First, Father argues that the record from his trial does not contain enough evidence to support the trial court's finding on the Department's pretrial motion seeking a finding that *aggravated circumstances* existed in his case, which allowed the trial court to relieve the Department of certain obligations it would have otherwise had to him and to accelerate the trial.[3] Second, Father contends he was denied his rights under the Family Code to effective assistance of counsel.[4] Third, Father contends the evidence fails to support the findings the trial court relied on to terminate his parental rights.

---

[2] The trial court also terminated Mother's rights to the twins. Mother did not appeal from the judgment terminating her rights.

[3] *See* Tex. Fam. Code Ann. § 262.2015(a), (b)(3)(G) (West 2019) (allowing a trial court to find *aggravated circumstances* exist when a parent has been convicted of any one of several crimes, which includes committing an aggravated sexual assault involving a child).

[4] *See id*. § 107.013 (West 2019) (requiring the court to appoint counsel to represent indigent parents if they respond and oppose the Department's suit seeking to terminate their parental rights); *In re B.G.*, 317 S.W.3d 250, 253-54 (Tex. 2010) (explaining that section 107.013 "embodies the right to effective counsel") (cleaned up).

In March 2018, the Department filed its original petition to terminate the parental rights of the unknown parents of the twins. For the first time, in its second amended petition filed in August 2018, the Department identified Father and one other man as alleged fathers of the twins. In September 2018, the trial court appointed an attorney to represent the twins' alleged fathers. In January 2019, DNA test results established the twins were Father's. The attorney the trial court appointed to represent the two alleged fathers became Father's court-appointed attorney, and that attorney represented Father in the trial.[5]

Shortly after the Department obtained the results of Father's DNA test, the Department filed a motion requesting to accelerate the trial. The Department's motion asserts that *aggravated circumstances* exist authorizing the trial court to dispense with several requirements otherwise required in cases filed by the Department to terminate a parent's rights.[6] In the motion, the Department asked the trial court to waive the Department's obligations to (1) provide Father with a family service plan, (2) to make reasonable efforts to unite the twins with their Father, and (3) to accelerate the trial. The Department based its motion on Father's obligation to

---

[5] *See* Tex. Fam. Code Ann. § 107.0132(c) (West 2019).

[6] *See id*. § 262.2015(a).

register with a sex offender registry based on a conviction Father incurred for committing an aggravated sexual assault against a child.[7]

About two weeks before trial, the trial court held a hearing on the Department's motion seeking an *aggravated-circumstances* finding.[8] No transcript for that hearing is included in the appellate record Father arranged to have filed to support his appeal. But the docket sheet in the Clerk's Record shows the parties and their attorneys appeared for the hearing on the Department's motion. According to the docket sheet, the parties presented evidence, argued about the motion's merits, and the trial court granted the motion. And the attorneys announced they were ready for the trial, which the trial court scheduled for late February 2017. The written transcripts from the trial, which are in the Reporter's Record, show that Father's trial counsel participated in all phases of the proceedings of the trial.

Cassie and Katie were eleven-months old at the time of the trial. In opening statement, the Department argued that Father's parental rights should be terminated because, in 2004, the State convicted him on a charge alleging that Father, in 2002,

---

[7] *See id*. § 262.2015(a), (b)(8) (West 2019).

[8] *Id*.

4

committed an aggravated sexual assault against a child.[9] For convenience, we will refer to the Family Code subsection the Department relied on at trial to terminate Father's parental rights as "Section L."[10]

Eight witnesses testified in the trial. The evidence admitted in the trial includes a certified copy of Father's 2004 conviction for the aggravated sexual assault against a child, a crime that occurred in 2002. The victim of the 2002 crime was thirteen-years old when the offense occurred. A copy of Father's indictment for the crime is in the evidence admitted at trial. The indictment alleges that Father penetrated the child's sexual organ with his sexual organ.

During the trial, the attorney the trial court appointed to represent the twins asked Father whether he caused a serious injury to the victim of the 2002 aggravated sexual assault. Father responded: "Yeah. I mean, I think at the time I was - - I mean, if I was doing drugs, she was doing drugs." Questions posed to Father in the trial reflect that he agreed that, given that the victim of the sexual assault was thirteen-year old child, he characterized the offense he committed in 2002 as a serious crime.

---

[9] *See id.* § 161.001(b)(1)(L)(viii), (b)(2) (West Supp. 2018).

[10] *Id.*

Relying on Section L, together with a separate best-interest finding, the trial court terminated Father's parent-child relationship with the twins.[11] Following the trial, the trial court signed a final order terminating Father's parental rights to the twins.

*Aggravated-Circumstances Findings*

The Family Code authorizes trial courts to relieve the Department of certain obligations it otherwise has to provide parents under the Family Code upon a finding of *aggravated circumstances*. The obligations the Department is relieved from include providing the parents of a child with a family service plan and making reasonable efforts to unite the parents with their child.[12] Following a pretrial evidentiary hearing, the trial court found *aggravated circumstances* existed in Father's case, which relieved the Department of the above obligations as to Father's case and allowed the trial court to accelerate the trial.

In issue one, Father argues the Department failed to present enough evidence to establish that the Department was entitled to have a favorable finding on the *aggravated-circumstances* issue it raised in Father's case. According to Father, had

---

[11] *See id.*

[12] *See id.* § 262.2015 (West 2019) (setting out eight criteria, with other subparts, that describe when *aggravating circumstances* exist).

6

the trial court not relieved the Department of its obligations, he would have benefitted from the Department's creating a family service plan designed to unite him with the twins.

But Father failed to provide this Court with a written transcript of the evidentiary hearing the trial court conducted on the Department's motion, which resulted in the *aggravated-circumstances* finding Father challenges in his first issue. From the docket sheet, we can tell the trial court heard evidence when deciding the Department's motion. And in his testimony at trial, Father mentioned testifying in the hearing.

The Rules of Appellate Procedure place a duty on appellants such as Father to provide the appellate court with a complete appellate record so the reviewing court may evaluate the validity of the complaints the appellants seek to raise in their appeals.[13] Generally, the appellate record consists of the Clerk's Record and, if

---

[13] *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (explaining that when the appellant has not complied with the rules of appellate procedure or filed a complete statement of facts, "the reviewing court is unable to ascertain whether a particular ruling by the trial court is harmful in the context of the entire case"); *In re S.M.-C.*, No. 2-07-039-CV, 2008 Tex. App. LEXIS 216, at *6 (Tex. App.—Fort Worth, Jan. 10, 2008, no pet.) (explaining that the appellate court had to presume that the missing portions of the Reporter's Record supported the trial court's ruling given the father's failure to create a proper appellate record).

necessary to the appeal, the Reporter's Record.[14] The appellant is responsible for asking the official reporter for the proceedings he wants the reporter to transcribe as part of the appellate record, and that duty applies to all proceedings relevant to the issues the appellant raises in his appeal.[15] The appellant's request to the official reporter must be in writing and must identify the exhibits and portions of the proceedings the Reporter's Record is to include.[16] The Rules of Appellate Procedure require that the appellant file a copy of the written request with the District Clerk,[17] but no such request is in the appellate record before us here.

Because the appellate record does not include a document showing whether Father sent a written request to the official reporter, we asked our Clerk to contact the trial court's clerk to determine if the record in that court includes the written request. Our Clerk learned that no such document was ever filed. Thus, we must

---

[14] Tex. R. App. P. 34.1.

[15] *See* Tex. R. App. P. 34.6(b)(1) (requiring the appellant to file the written request he sends to the official reporter to prepare the Reporter's Record for the appeal); Tex. R. App. P. 35.3(b)(2) (requiring the official reporter to prepare, certify, and file the Reporter's Record if the appellant sent a written request asking for the record).

[16] *Id.* 34.6(b)(1).

[17] *See id.* 34.6(b)(2).

presume the missing portions of the Reporter's Record supports the trial court's *aggravated-circumstances* finding.[18]

*Termination Findings*

A. Standard of Review

For convenience, we address Father's third issue before addressing the arguments he raises in issue two. In issue three, Father argues the evidence is legally and factually insufficient to support the trial court's findings that resulted in the termination of his parental rights. According to Father, Section L of the Family Code required the Department to prove two things, (1) that Father had once been convicted for sexually assaulting a child and (2) that the assault resulted in a serious injury or death to the child.[19] While Father concedes there is sufficient evidence in the record to show that he had a prior conviction for sexually assaulting a child, he suggests the Department failed to establish the assault caused any serious injury to the child.

To terminate Father's rights to the twins, the Department had the burden to present legally and factually sufficient evidence to prove (1) that Father's rights should be terminated under Section L and (2) to prove that terminating his rights to

---

[18] *Christiansen,* 782 S.W.2d at 843; *In re S.M.-C.*, 2008 Tex. App. LEXIS 216, at *6.

[19] *See* Tex. Fam. Code. Ann. § 161.001(b)(1)(L)(viii).

the twins is in their best interest.[20] When conducting a legal sufficiency review, we examine the evidence in the light most favorable to the trial court's finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true."[21] We assume that the factfinder resolved disputed facts in a manner that favors its finding if a reasonable factfinder could have done so, and we disregard all evidence a reasonable factfinder could have disbelieved or found incredible. If no reasonable factfinder could form a firm belief or conviction that the matter the party with the burden of proof was required to prove is true, the evidence is legally insufficient.[22]

In a factual sufficiency review, we must determine whether the evidence allowed the factfinder, acting reasonably, to form a firm belief or conviction about the truth of the allegations made by the party that had the burden of proof in the trial. We evaluate whether, from the evidence, the factfinder could have reasonably found the evidence clear and convincing on the matter to be proven. And we consider

---

[20] *See id.* § 161.001(b)(1)(L)(viii), (b)(2) (West Supp. 2018); *see also In re J.L.*, 163 S.W.3d at 84.

[21] *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

[22] *Id.*

whether the disputed evidence is such that a reasonable factfinder could not have ignored it in deciding to terminate the parent's rights. If, given the entire record, the evidence contrary to the ruling the factfinder made is so significant that no reasonable factfinder could have resolved the dispute by terminating the parent's rights, the evidence is factually insufficient.[23]

The decision to terminate a parent's rights must be supported by clear and convincing evidence, which is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[24]

B. Analysis—the Section L Finding

When accompanied by a best-interest finding, Section L authorizes trial courts to terminate a parent's relationship with a child when the parent is shown to have a conviction for aggravated sexual assault against a child and the parent's conduct caused the child's death or serious injury.[25] Under the Penal Code, an aggravated

---

[23] *Id.*

[24] Tex. Fam. Code Ann. § 101.007 (West 2019); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

[25] *See* Tex. Fam. Code Ann. § 161.001(b)(1)(L)(viii).

sexual assault occurs if the defendant intentionally or knowingly penetrates the sexual organ of a child younger than fourteen by any means.[26]

Section L requires the State to prove a *serious injury* resulted from the parent's conduct.[27] But the Family Code does not define the term *serious injury*. Absent a definition for the term provided by the Legislature, we give the phrase its ordinary meaning.[28] To do so, we look to definitions used in dictionaries since they contain relevant information about the rules of grammar and the common meanings used for words.[29]

---

[26] Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(B) (West 2019).

[27] Tex. Fam. Code Ann. § 161.001(b)(1)(L) (allowing a court to terminate a parent's rights based on a finding the parent was criminally responsible for the death or *serious injury* of a child).

[28] *See* Tex. Gov't Code Ann. § 312.002 (West 2013).

[29] *See id*. § 311.011(a) (West 2013) (providing that words and phrases used in statutes, unless defined by the Legislature, "shall be read in context and construed according to the rules of grammar and common usage"); *Powell v. Stover*, 165 S.W.3d 322, 326 (Tex. 2005) (relying on Webster's Third New International Dictionary to construe a word used in the Family Code); *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 196 (Tex. 2004) (applying the plain-meaning rule, a well-established rule of statutory construction in Texas, by looking to dictionaries defining a term the Legislature used in the Texas Administrative Procedure Act).

Webster's Third New International Dictionary defines the term *serious* as causing "considerable distress, anxiety, or inconvenience: attended with danger[.]"[30] The New Oxford American Dictionary defines *serious* as "significant or worrying because of possible danger or risk; not slight or negligible[.]"[31] Webster's defines *injury* as "an unjust or undeserved infliction of suffering or harm[,]"[32] while Oxford's American Dictionary defines *injure* to include "harm[ing] or impairing (something)[.]"[33] Thus, evidence allowing the factfinder to infer that a child suffered a serious emotional or psychological injury as opposed to having suffered a *bodily injury* is all that is needed to prove a *serious injury* resulted from an aggravated assault under Section L.

Here, the evidence in the record shows that Father sexually assaulted a thirteen-year-old child by means of penetrating her sexual organ with his. Father was 22 years old when the 2002 offense occurred. Father testified the crime he committed in 2002 was serious and impacted the victim's life in a "significant" way. While Father suggests the only evidence relevant to the question of whether a *serious injury*

---

[30] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2073 (2002).

[31] NEW OXFORD AMERICAN DICTIONARY 1594-95 (3d ed. 2010).

[32] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1164.

[33] NEW OXFORD AMERICAN DICTIONARY 894.

occurred is the judgment convicting him of aggravated sexual assault, we disagree given Father's testimony in this record and the information in Father's indictment, both of which constitute evidence the trial court could reasonably consider in deciding whether Father's conduct resulted in a *serious injury* to the child.

We conclude legally and factually sufficient evidence supports the trial court's finding that a *serious injury* resulted to the child based on Father's conduct.

B. Analysis—Best-Interest Finding

In conjunction with Father's challenge to the Section L finding, he also argues that insufficient evidence supports the trial court's best-interest finding. In reviewing best-interest findings, we consider a non-exhaustive list of factors in our review, including (1) the desires of the children, (2) the emotional and physical needs of the children now and in the future, (3) the emotional and physical danger to the children now and in the future, (4) the parenting abilities of the parent seeking custody, (5) programs available to assist the parent to promote the best interest of the children, (6) plans for the children by the parent seeking custody and the agency seeking custody, (7) the stability of the home or the placement the parent seeking custody proposes for the children, (8) any acts or omissions of the parent showing the existing parent-child relationship is improper, and (9) any excuses the parents offer to explain

their acts or omissions.[34] None of these factors is controlling and evidence on only one factor may provide enough evidence to allow an appellate court to affirm a factfinder's best-interest finding.[35] "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence."[36]

When the trial occurred, the twins were too young to express their desires. In cases involving children who can't express their own desires, "the factfinder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent" when evaluating what is in each child's best interest.[37]

Here, the evidence shows that two months before the February 2017 trial, the Department placed the twins with their current foster parents, Mother's step-brother and his wife. The twins' foster parents testified in the trial. According to the twins'

---

[34] *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); Tex. Fam. Code Ann. § 263.307(b) (West 2019).

[35] *See In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.).

[36] *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied) (citing *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.).

[37] *In re L.G.R.,* 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

foster mother, she and her husband have bonded with the twins. She stated the twins treat them like parents. The foster parents' testimony shows the twins are in a loving home and are thriving there. The foster parents testified they can provide for the twins and do not need any additional assistance. Two court-appointed special advocates for the twins testified in the trial. Both testified that terminating Father's parental rights to the twins would serve the twins' best interest because terminating their parents' rights would allow them to be adopted.

When he testified, Father suggested an alternative to the Department's plan to have the twins adopted by their foster parents. According to Father, he thought it best if the court would allow the twins to continue living with the foster parents. Nonetheless, he suggested the twins would be better off by not terminating his rights and giving him supervised visitation while requiring him to provide the twins with financial support. Under Father's plan, Father wanted the court to allow him to begin to bond with the twins beginning with supervised visitation with the expectation that he could return to court and seek expanded rights as their relationship grew. But the trial court could reasonably disagree that Father's plan was better for the twins, as

the court had the right to prioritize the twins' need for a permanent placement over his desire to maintain a supervised relationship with them.[38]

The evidence before the trial court also shows that Father not only had a criminal history involving sexually abusing a child, but he also has a history of using drugs. His testimony allowed the trial court to infer that he is highly tolerant toward those who use illegal drugs. He has both used and sold illicit drugs in the past. While Father denied using drugs in the three-month period preceding the trial, the trial court was not required to believe him.[39] Instead, the trial court could have believed Father presented a significant risk that, at some point in the twins' lives, he would expose them to the illegal drugs.

Courts consider a parent's capacity to provide a child with a safe and stable home when engaging in a best-interest analysis.[40] During trial, Father agreed that his home is not an appropriate place to bring the twins. And the evidence about Father's

---

[38] *See* Tex. Fam. Code Ann. § 263.307(a) (West 2019) (providing "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest).

[39] *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) (explaining that factfinders, as the sole judge of the credibility of the witnesses, "may choose to believe one witness and disbelieve others").

[40] *See In re J.D.*, 436 S.W.3d 105, 119 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

past living arrangements shows he never provided another person with a stable home over a prolonged period. The trial court could have reasonably believed that Father's pattern would continue, interfering with the need the twins have for a prompt and permanent placement in a safe and stable home.[41]

We conclude the record contains enough evidence to support the findings the trial court relied on to terminate Father's rights.[42] We overrule Father's arguments claiming that the record contains legally and factually insufficient evidence to support the trial court's ruling.

*Ineffective Assistance of Counsel*

In issue two, Father argues he received ineffective assistance of counsel, prejudicing his case. When the Department seeks to terminate a parent's rights to a child and the parent is indigent, the Family Code requires the trial court to appoint

---

[41] *Id.* (cleaned up).

[42] *See In re J.F.C.*, 96 S.W.3d at 266 (explaining that the appellate court's analysis should determine whether the factfinder, under a clear and convincing standard of proof, could have formed a firm belief or conviction about the Department's claims).

counsel to represent the parent.[43] This includes a right to constitutionally-effective counsel.[44]

In assessing whether counsel was ineffective, we apply the same standards applied to claims that arise in the trial of criminal cases where attorneys are appointed to represent indigent defendants.[45] The burden of proof on a claim of ineffective assistance lies with the party claiming his court-appoint counsel rendered ineffective assistance.[46] To prevail on this claims, the parent must establish the record shows that (1) court-appointed counsel's performance was deficient and (2) the deficient performance prejudiced the defense.[47]

In reviewing a claim of ineffective assistance, we consider the circumstances surrounding the case and focus on whether counsel performed in a reasonably effective manner.[48] The appellate court's review of counsel's performance at trial is

---

[43] *See* Tex. Fam. Code Ann. § 107.013(a); *In re B.G.*, 317 S.W.3d 250, 253 (Tex. 2010).

[44] *Id.*

[45] *In re M.S.*, 115 S.W.3d 534, 544-45 (Tex. 2003).

[46] *Id.* at 545.

[47] *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *In re J.P.B.*, 180 S.W.3d 570, 574 (Tex. 2005).

highly deferential and presumes counsel's conduct fell within the range of reasonable professional assistance.[49] To establish that a parent received ineffective assistance of counsel, the record needs to show that the conduct engaged in by trial counsel is the type of conduct that no competent attorney would have chosen to use given the responsibilities legal counsel owe their clients.[50]

Put another way, the evidence showing that trial counsel was ineffective must be firmly established in the record.[51] When the record is silent about why counsel engaged in the alleged acts or omissions that are the subject of the arguments in the appeal, the reviewing court must presume that valid reasons existed explaining the choices trial counsel faced when representing their clients.[52]

The record before us does not support the complaints Father levels at trial counsel. For instance, Father complains the trial court failed to require his attorney to perform the duties required of court-appointed attorneys.[53] But the record does

---

[48] *M.S.*, 115 S.W.3d at 545.

[49] *Id.* (cleaned up).

[50] *Id.*

[51] *In re L.G.R.*, 498 S.W.3d at 209 (cleaned up).

[52] *See id.*

not show that Father's court-appointed attorney failed to comply with any duties he owed Father. For example, the Family Code requires court-appointed attorneys to interview the witnesses and investigate the facts of the case.[54] Nothing shows that trial counsel failed to perform those duties.[55]

Instead, the record shows that trial counsel appeared at pretrial hearings and the trial on Father's behalf. During the trial, trial counsel offered reasonable explanations to explain why Father was late for trial, made various objections to the testimony being offered by the other parties, cross-examined witnesses, made an opening statement, and made a closing argument. In final argument, Father's trial counsel argued the evidence did not support the Department's claims, and he suggested that the twins would be better served by Father's plan over the plan proposed by the Department. So the record before us shows that trial counsel took

---

[53] *See* Tex. Fam. Code Ann. § 107.0131(a) (West 2019).

[54] *See id.* §§ 107.013(a), 107.0131(a).

[55] *See id.* § 107.0131(a).

an active role in the trial. Moreover, Father points to nothing in the record to show how the alleged actions or inactions of trial counsel prejudiced his defense.[56]

We conclude Father failed to meet his burden to establish that trial counsel performed deficiently or prejudiced his rights under the standards in *Strickland*.[57]

## Conclusion

We hold Father's issues lack merit and affirm the trial court's judgment terminating Father's relationship with the twins.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on June 18, 2019
Opinion Delivered October 3, 2019

Before Kreger, Horton and Johnson, JJ.

---

[56] A party claiming ineffective assistance of counsel must establish both deficient performance and resulting prejudice. *See Strickland*, 466 U.S. at 687.

[57] *Id.*